1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   BILLYJOE FULTON,

8                          Plaintiff,              NO: 12-CV-0537-TOR

9        v.                                        ORDER GRANTING DEFENDANT'S
                                                   MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting                      JUDGMENT
    Commissioner of Social Security
11  Administration,

12                         Defendant.

13

14        BEFORE THE COURT are the parties' cross motions for summary

15  judgment (ECF Nos. 13, 14). Plaintiff is represented by Rebecca M. Coufal.

16  Defendant is represented by Gerald J. Hill. The Court has reviewed the

17  administrative record and the parties' completed briefing and is fully informed.

18  For the reasons discussed below, the Court grants Defendant's motion and denies

19  Plaintiff's motion.

20  ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*, at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in

1    "substantial gainful activity," the Commissioner must find that the claimant is not

2    disabled.  20 C.F.R. § 416.920(b).

3         If the claimant is not engaged in substantial gainful activities, the analysis

4    proceeds to step two.  At this step, the Commissioner considers the severity of the

5    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6    "any impairment or combination of impairments which significantly limits [his or

7    her] physical or mental ability to do basic work activities," the analysis proceeds to

8    step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9    this severity threshold, however, the Commissioner must find that the claimant is

10   not disabled.  *Id.*

11        At step three, the Commissioner compares the claimant's impairment to

12   several impairments recognized by the Commissioner to be so severe as to

13   preclude a person from engaging in substantial gainful activity.  20 C.F.R.

14   § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15   enumerated impairments, the Commissioner must find the claimant disabled and

16   award benefits.  20 C.F.R. § 416.920(d).

17        If the severity of the claimant's impairment does meet or exceed the severity

18   of the enumerated impairments, the Commissioner must pause to assess the

19   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

20   defined generally as the claimant's ability to perform physical and mental work

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to

establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy." 20 C.F.R.

§ 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security

income (SSI) on April 28, 2009, alleging an onset date of January 1, 2001. Tr.

193, 197. His claims were denied initially and on reconsideration. Tr. 98, 101,

107. Plaintiff filed a timely request for a hearing (Tr. 119-121) and appeared at

three hearings before an administrative law judge ("ALJ") on October 28, 2010,

January 26, 2011, and June 8, 2011. Tr. 31-93. Plaintiff was represented by an

attorney at the last two hearings and during the last hearing, through counsel,

dismissed his disability insurance (Title II) claim and amended his alleged onset

date to April 28, 2009. Tr. 63-64.

The ALJ issued her decision on July 7, 2011, finding that Plaintiff was not

disabled under the Act. Tr. 12-25. On August 27, 2012, the Appeals Council

denied Plaintiff's request for review, Tr. 1-6, making the ALJ's decision the

Commissioner's final decision that is subject to judicial review. 42 U.S.C. §§

405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

This is a step 5 case in which the ALJ found Plaintiff was able to perform

other jobs existing in significant numbers in the national economy. Tr. 24-25.

**ISSUES**

Plaintiff, Billyjoe Fulton, seeks judicial review of the Commissioner's final decision denying him supplemental security income under Title XVI of the Social Security Act. Plaintiff has identified three issues for review. First, he argues that the ALJ failed to make proper findings regarding his pain and credibility. ECF No. 13 at 11-15. Second, Plaintiff asserts that the ALJ's residual functional capacity finding was not supported by the medical evidence of record. *Id*., at 16-18. Finally, Plaintiff argues there are "numerous [other] errors" requiring a remand. *Id*., at 19.

**DISCUSSION**

**A. The ALJ's Adverse Credibility Findings**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 404.1508; 404.1527. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective

1    evaluation as to the severity of the impairment.  *Id.*  This rule recognizes that the

2    severity of a claimant's symptoms "cannot be objectively verified or measured."

3    *Id.* at 347 (quotation and citation omitted).

4         In the event that an ALJ finds the claimant's subjective assessment

5    unreliable, however, "the ALJ must make a credibility determination with findings

6    sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not

7    arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958

8    (9th Cir. 2002).  In making such a determination, the ALJ may consider, *inter alia*:

9    (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

10   testimony or between his testimony and his conduct; (3) the claimant's daily living

11   activities; (4) the claimant's work record; and (5) testimony from physicians or

12   third parties concerning the nature, severity, and effect of the claimant's condition.

13   *Id.*  The ALJ may also consider a claimant's "unexplained or inadequately

14   explained failure to seek treatment or to follow a prescribed course of treatment."

15   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  If there is no evidence

16   of malingering, the ALJ's reasons for discrediting the claimant's testimony must

17   be "specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th

18   Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify

19   the testimony she or he finds not to be credible and must explain what evidence

20   undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1   2001).

2        Here, Plaintiff recognizes that the ALJ must provide "specific, clear and

3   convincing reasons" for rejecting his subjective complaints but contends that "has

4   not happened."  ECF No. 13 at 14-15.  Plaintiff simply argues that he provided

5   evidence of his underlying medical problems and there is no showing he is

6   malingering.  Thus, Plaintiff concludes the ALJ's failure to properly address his

7   pain and credibility is legal error.  *Id*., at 15.

8        First, the absence of evidence of malingering does not preclude the ALJ

9   from discounting Plaintiff's complaints.  If there is no evidence of malingering, the

10  ALJ must provide specific, clear and convincing reasons for discrediting the

11  complaints.  *See Chaudhry, supra*.  Contrary to Plaintiff's assertions, the ALJ

12  provided specific, clear and convincing reasons for discrediting his testimony "that

13  his impairments, in combination, are significant enough to prevent him from

14  working an eight-hour workday, forty-hour workweek."  Tr. 18.

15       The ALJ found that Plaintiff's "medically determinable impairments could

16  reasonably be expected to cause some of the alleged symptoms; however, the

17  claimant's statements concerning the intensity, persistence and limiting effects of

18  these symptoms are not credible to the extent they are inconsistent with the….

19  residual functional capacity assessment" the ALJ specified in detail in her opinion.

20  Tr. 18.

Dr. Everhart's evaluation showed that Plaintiff admitted that he could bench press up to fifty pounds. While Dr. Everhart observed some pain behavior, Plaintiff was capable of good persistence and pace during the evaluation, imaging of his right shoulder revealed only mild degenerative changes and Naproxen made the right shoulder pain "manageable." Tr. 18. The physical therapist stated the Plaintiff missed his appointments and never completed the program. Tr. 19. Yet, the physical therapist reported that Plaintiff's ability to complete activities of daily living was "much better," he was engaging in a "vigorous" gym exercise and conditioning program, and by September 2009 he was making "excellent progress" in regaining the strength of his arm. *Id.* By October 2009, the Plaintiff could complete his "normal" daily activities, including target shooting, with holding the pistol in his right hand, lifting/throwing and stacking firewood and using a drill with his right hand. *Id.* An assessment showed he could raise his arms fully overhead with weight, up to 180 degrees. *Id.* In 2010, the claimant described his shoulder pain as moderate with only a dull ache and an examination did not reveal any weakness in the right arm. *Id.* By 2011, the claimant stated he had been performing his exercises and thought his shoulder was "back to where it was prior" to his injury. *Id.* The ALJ observed that Plaintiff remained physically active hiking, hunting and going on nature walks with his friends. *Id.* In 2009, the Plaintiff went on a fishing trip, he did some target practicing and he stated he was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    exercising daily. *Id*.  By 2010, the Plaintiff reported walking "quite frequently"

2    during the day and spent several months in Arkansas over the summer to "help out

3    his family." *Id*.

4         Dr. Everhart's assessment of a GAF score of 60 correlated with only mild

5    depression with no more than moderate limits. Tr. 20.

6         Plaintiff complained about headaches but a CT scan of his head was

7    unremarkable and later medical reports are devoid of any complaints of headaches.

8    Tr. 19.  His hearing deficit was corrected by hearing aids.  Tr. 19.

9         These are just a few of the many detailed, clear and convincing reasons the

10   ALJ gave for discounting the Plaintiff's subjective complaints of debilitating pain

11   in support of his claim of total disability.  *See* Tr. 18-23.  All these findings are

12   supported by substantial evidence in the record.  Accordingly, the Court concludes

13   that the ALJ did not arbitrarily discredit Plaintiff's testimony.

14   **B. The ALJ's Residual Functional Capacity Assessment**

15        As noted above, residual functional capacity is defined as the claimant's

16   ability to perform physical and mental work activities on a sustained basis despite

17   his or her limitations.  20 C.F.R. § 404.1545(a)(1).  In making an RFC assessment,

18   the Commissioner is required to consider all of the claimant's impairments,

19   including impairments that are not "severe" within the meaning of the regulations.

20   20 C.F.R. § 404.1545(a)(2). In this case, the ALJ assessed Plaintiff's RFC as

1   follows:

2         [C]laimant has the residual functional capacity to perform less than
the full range of medium work as defined in 20 CFR 404.1567(c) and

3         416.967(c). The claimant can lift/carry up to ten pounds continuously,
up to twenty pounds frequently and up to fifty pounds occasionally.

4         The claimant can sit four hours, stand one hour and walk one hour at
one time. Out of an eight-hour workday, the claimant can sit, stand

5         and walk eight hours. The claimant can continuously climb ramps or
stairs. The claimant can never climb ladders, ropes or scaffolds. The

6         claimant cannot balance or crawl. The claimant can bend, stoop,
squat, kneel and crouch. No limitations exist with the left upper

7         extremity. <u>The claimant cannot reach overhead with the right upper
extremity. The claimant can frequently reach with the right upper</u>

8         <u>extremity and push/pull.</u> The claimant can continuously handle,
finger, push and pull. The claimant must avoid hazards. The claimant

9         can hear with hearing aids and can speak and understand, remember
and carry out simple instructions. The claimant can respond

10        appropriately to supervisors, coworkers and usual work settings. The
claimant can deal with changes in routine work settings. The claimant

11        would do best working with things rather than people, in jobs away
from the public and in proximity to but not in close cooperation with

12        others. The claimant can have occasional contact with supervisors.

13   Tr. 17 (emphasis added).

14         Plaintiff contends that the ALJ "changed the reaching of the right upper

15   extremity from never overhead reaching, occasionally reaching in all directions

16   (Tr. 86) to 'amend the hypothetical to in (sic) include reaching to frequently' (Tr.

17   89) at which point there are jobs."  ECF No. 13 at 17.  Additionally, Plaintiff

18   contends the ALJ did not include other limitations noted by nurse practitioner

19   Imsland. *Id*.

20         The Court has reviewed the opinion of nurse practitioner Imsland and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

recognizes that the ALJ validly rejected her opinion for several reasons, including that it was contradicted by other medical evidence and it was without detailed and supportive documentation.  Tr. 21-22.  Nurse practitioners are not "acceptable medical sources" as that term is used in 20 C.R.R. § 404.1513(a), but are considered "other sources" under § 404.1513(d)(1).  Other sources are not entitled to the same deference. The ALJ may discount testimony from these "other sources" if the ALJ gives reasons germane to each witness for doing so.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation and quotations omitted).

Plaintiff contends he was limited to "occasional" reaching with his right arm thus, he contends the hypothetical given to the vocational expert that he could "frequently" reach with his right arm is prejudicially erroneous.  No one disputes that Plaintiff has unlimited range of motion in his left arm.

A district court may not substitute its judgment for that of the Commissioner.  If the evidence "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina*, 674 F.3d at 1111.

The record contains three opinions from acceptable medical sources, 20 C.F.R. § 416.913(a)(1), concerning Plaintiff's ability to reach: First, Charles Wolfe, M.D., completed an RFC assessment form and opined that Plaintiff's reaching was "limited."  Tr. 23, 302.  Dr. Wolfe specified, "[right] ext[remity]

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    limited due to pain and decrease [range of motion]." Tr. 23, 302.  Second, Howard

2    Platter, M.D. affirmed Dr. Wolfe's assessment.  Tr. 23, 361.  Third, after

3    examining Plaintiff, Dr. Carraher completed a form, wherein he checked boxes

4    indicating that Plaintiff could never reach overhead with his right arm, but could

5    occasionally reach in all other directions.  Tr. 22, 478.  Dr. Carraher also explained

6    that "[i]t is unclear . . . why he should not have better range of motion" an October

7    2009 discharge summary from Holy Family Hospital states [Plaintiff] "had started

8    doing more of his needed and what he considered normal activities, including

9    target shooting holding a pistol with the right arm, lifting and throwing and

10   stacking firewood. . ." and using a drill and "he would seem to have better function

11   with the right upper extremity than indicated during my exam today." Tr. 22, 484-

12   85.  Dr. Carraher concluded that "I feel that there is some degree of symptom

13   magnification concerning [his] right shoulder. . ." Tr. 22, 485.

14        Considering the medical evidence, as well as other evidence concerning

15   Plaintiff's daily activities, and the evidence of symptom magnification, the ALJ's

16   finding that Plaintiff could frequently reach, but not overhead with his right arm, is

17   supported by substantial evidence in the record.  There is no error in the

18   hypothetical given to the vocational expert.

19   **C. Numerous Other Errors**

20        Plaintiff's final contention is that "[t]here are numerous errors in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

decision some of which have been detailed above . . . . which errors require this matter be at the least remanded for another hearing. . ."  ECF No. 13 at 19. Plaintiff provides no further argument to support this allegation, thus, the Court will reject it. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address plaintiffs argument "because [plaintiff] failed to argue this issue with any specificity in his briefing.").

Plaintiff's argument also incorporated by reference his letter to the Appeals Council.  ECF No. 13 at 9.  Much of that letter, Tr. 272-73, has been argued by Plaintiff in his brief before this Court, but to the extent it hasn't been argued with any specificity it too is rejected.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 14) is

    **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** May 10, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15